UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| TINA M. SHOWERS,<br><br>    Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. 2:20-cv-00057<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:   The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

Plaintiff Tina M. Showers filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 4.) Now before the Court is Showers's motion for judgment on the administrative record (Doc. No. 24), to which the Commissioner has responded in opposition (Doc. No. 26). Having considered the parties' arguments and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Showers's motion be denied.

**I.    Background**

    **A.    Showers's DIB and SSI Applications**

Showers filed applications for DIB and SSI on August 10, 2017, alleging that she has been disabled since January 6, 2017, as a result of bipolar disorder, posttraumatic stress disorder

(PTSD), anxiety, panic attacks, insomnia, identity disorder, psychotic disorder, hallucinations, spondylosis, tail bone fracture, nerve damage, and neuropathy of her legs and feet. (AR 173, 198.[1]). The Commissioner denied Showers's applications initially and on reconsideration. (AR 222, 223, 292, 293.) At Showers's request, an administrative law judge (ALJ) held a hearing on August 6, 2019. (AR 105–40, 310–15.) Showers appeared with counsel and testified. (AR 105, 114–32, 136–37.) The ALJ also heard testimony from Sheri Pruitt, a vocational expert. (AR 105, 132–36.)

### B. The ALJ's Findings

On October 30, 2019, the ALJ issued a written decision finding that Showers was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claims for DIB and SSI. (AR 70–93.) The ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019[.] (Exhibit B10D)[.]

2. The claimant has not engaged in substantial gainful activity since January 6, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

\* \* \*

3. The claimant has the following severe impairments: spine disorders, reconstructive surgery of a weight bearing joint, peripheral neuropathy, depressive disorder, posttraumatic stress disorder, and substance addiction disorders—drugs and alcohol (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1] The Transcript of the Administrative Record (Doc. No. 20) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry 20 pounds occasionally, ten pounds frequently. She can stand and/or walk, with normal breaks, for a total of six hours per eight-hour workday, and can sit, with normal breaks, for a total of six hours per eight-hour workday. She can occasionally push or pull with bilateral lower extremities. In terms of postural limitations, she can never climb ladders, ropes, or scaffolds, or crawl, but can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel and crouch. In terms of environmental limits, she should avoid more than occasional exposure to vibration and hazards (which include moving mechanical parts and unprotected heights). In terms of mental limitations, she is restricted to the performance of simple, routine or repetitive tasks with a reasoning level no greater than three and can be learned in one-to-three months. She is limited to low-stress work, which is defined as requiring no greater than occasional decisions or judgments to be made, no assembly line work, and occasional changes in a routine work setting. She can never tolerate exposure to the general public. She can work in close proximity to others, but with only brief, incidental interaction with others and no tandem job tasks requiring cooperation with other workers to complete the task. She can work where supervisors occasionally interact with the worker throughout the day.

\* \* \*

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7.  The claimant was born on May 2, 1966 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 6, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 76–84.) The Social Security Appeals Council denied Showers's request for review on July 15, 2020, making the ALJ's decision the final decision of the Commissioner. (AR 1–7.)

### C. Appeal Under 42 U.S.C. § 405(g)

Showers filed this action for review of the ALJ's decision on September 15, 2020 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Showers argues that the ALJ erred in failing to properly evaluate Showers's subjective testimony concerning her physical symptoms, failing to properly determine Showers's residual functional capacity, and erroneously accepting the testimony of the vocational expert. (Doc. No. 25.) The Commissioner argues that the ALJ's decision is supported by substantial evidence and complies with SSA regulations. (Doc. No. 26.) Showers did not file an optional reply.

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether

it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

**B.     Determining Disability at the Administrative Level**

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical. *See Colvin*, 475 F.3d at 730 (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity,

then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite her limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits her to perform past

relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of her residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

III.    Analysis

    A.    The ALJ's RFC Determination

Showers argues that the ALJ failed to properly determine Showers's RFC because "the ALJ did not give significant weight to any medical opinions regarding Ms. Showers' physical functioning[;][2] nor did the ALJ cite to any other persuasive evidence that [Showers] can perform activities consistent with" the RFC determination. (Doc. No. 25, PageID# 2879 (citation omitted).) Showers also argues that the ALJ improperly discounted Showers's testimony about her back and leg pain and failed to evaluate whether Showers could sustain work on a regular and continuous basis. (Doc. No. 25.) As the Commissioner points out, these arguments lack merit because the ALJ's RFC determination is supported by substantial record evidence and complies with SSA regulations evaluation of medical opinions and assessment of a claimant's symptoms. (Doc. No. 26; AR 78–82.)

---

[2]    Showers does not identify any medical opinions that she believes should have been given significant weight.

7

Case 2:20-cv-00057    Document 27    Filed 02/22/22    Page 7 of 16 PageID #: 2910

1. **The ALJ's Evaluation of Showers's Physical Symptoms**

SSA regulations require an ALJ determining disability to "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). A two-step evaluation process applies to claims of disabling pain. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016); *Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 449 (6th Cir. 2017). First, the ALJ determines "whether there is an underlying medically determinable physical or medical impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2; *Amir*, 705 F. App'x at 449. If the ALJ finds that such an impairment exists, she must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *2; *Amir*, 705 F. App'x at 449. In addition to medical evidence, factors relevant to evaluating the intensity, persistence, and limiting effects of an individual's pain include:

> "the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms . . . ; and any other factors bearing on the limitations of the claimant to perform basic functions."

*Amir*, 705 F. App'x at 449 (alteration in original) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007)); *see also* SSR 16-3p, 2016 WL 1119029, at *7.

Showers testified that pain in her back and legs limited her ability to work. (AR 118–19, 122–25.) The ALJ analyzed Showers's physical symptoms as follows:

> In line with the claimant's allegations, she has a history of a fall with a broken ankle and subsequent ankle plate surgery with tenderness over the plate. The plate was later removed. Spinal imaging showed degenerative changes including spondylolysis, disc bulging, and disc space height loss. Electrodiagnostic studies of

8

Case 2:20-cv-00057    Document 27    Filed 02/22/22    Page 8 of 16 PageID #: 2911

the lower extremities were abnormal and evidenced radiculopathy, and she was noted as exhibiting decreased lower extremity sensation. Her spinal range of motion was limited and painful. She at times walked with an antalgic gait. She exhibited spinal tenderness to palpation. She underwent spinal surgery and continued to exhibit symptoms including an antalgic gait and reduced sensation, though with intact balance and no weakness. Finally, she was prescribed medications for pain relief (e.g. Exhibits B7F/4/13/37, B11F/12/36/37, B20F/4, 21F/7/10–12, B26F/19, B31F/24–26, B45F/3/4, B46F, B49F).

On the other hand, her gait, station, and extremity motor and tone were normal. Straight leg raising was negative bilaterally. Her ankle range of motion was described as excellent, drawer testing was negative, she exhibited 5/5 dorsiflexion and plantar flexion strength, and imaging showed that her fracture had healed. She was also described as doing "reasonably well" one year after her spinal surgery (e.g. Exhibits B4F/15, B7F/13, B11F/36, B21F/7/24, B24F/4, B26F/19, B41F/1, B45F/4).

Furthermore, she was described as well-developed and well-nourished. She exhibited regular lung rate and effort, and cardiovascular functioning was normal. She was noted as wishing to continue with her medication regimen, which offered improvement in function, activities of daily living, and quality of life. She also testified to baking about four times a month, and that she walks her dog at least twice a day for ten minutes at a time (e.g. Exhibits B7F/3/13, B11F/36, B21F/7, B24F/4, B26F/19, B45F/3).

In sum, while the claimant was diagnosed with degenerative disc disease, underwent spinal surgery, exhibited lower extremity radiculopathy, underwent ankle plate surgery and ankle plate removal surgery, and at times walked with an antalgic gait, it was also noted - in contradiction to the intensity of her allegations— that her gait, station, and extremity motor and tone were normal, that straight leg testing was negative, that her ankle range of motion was excellent, that she was doing "reasonably well" one year after spinal surgery, that she appeared well-developed and well-nourished, and that her medication regimen was helpful (e.g. Exhibits B4F/15, B7F/3/4/13/37, B11F/12/36/37, B20F/4, 21F/7/10–12/24, B24F/4, B26F/19, B31F/24–26, B41F/1, B45F/3/4, B46F, B49F). Taking the above into consideration, the undersigned finds that the claimant can perform light work except she can lift and/or carry 20 pounds occasionally and ten pounds frequently; can stand and/or walk, with normal breaks, for a total of six hours per eight-hour workday; can sit, with normal breaks, for a total of six hours per eight-hour workday; can occasionally push or pull with bilateral lower extremities; can never climb ladders, ropes, or scaffolds, or crawl, but can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel and crouch; and, in terms of environmental limitations, she should avoid more than occasional exposure to vibration and hazards (which include moving mechanical parts and unprotected heights).

(AR 80.)

The Court finds that the ALJ applied the correct legal standard to analyze Showers's statements about her physical symptoms and that the ALJ's RFC determination is supported by substantial evidence. Applying the two-step framework above, the ALJ found that step one was satisfied because Showers's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (AR 79.) At step two, however, the ALJ determined that Showers's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the objective medical evidence and other evidence in the record. (*Id.*) In reaching this conclusion, the ALJ cited and discussed record evidence including spinal imaging records from 2016, 2017, and 2019; a 2017 nerve conduction study, treatment records from Showers's 2017 ankle surgery and 2018 spinal surgery; and medical treatment notes from 2017 through 2019. (AR 80.) The ALJ also considered Showers's daily activities. (*Id.*)

Showers argues that this analysis was flawed because the ALJ did not mention a 2017 EMG of Showers's lower extremities or her continued reports of pain, reduced sensation, and an antalgic gait after her 2018 spinal surgery. (Doc. No. 25 (citing AR 2126, 2216, 2253, 2629).) However, the ALJ explicitly discussed the results of the 2017 EMG, finding that it "w[as] abnormal and evidenced radiculopathy, and [Showers] was noted as exhibiting decreased lower extremity sensation." (AR 80 (citing AR 801).) The ALJ also explicitly discussed that Showers continued to exhibit an antalgic gait and reduced sensation after her spinal surgery. (AR 80.) While Showers reported continued pain after surgery, she told her providers that medication reduced her pain from a 10 to a 3 on a 10-point scale. (AR 2253.) This is consistent with the ALJ's finding that Showers's "medication regimen was helpful." (AR 80.) Showers has not advanced any other arguments regarding the ALJ's analysis of her pain and, in light of the extensive record evidence that the ALJ discussed in her thorough analysis of Showers's symptoms, the Court finds that the ALJ's

conclusion regarding Showers's pain is supported by substantial evidence. This Court defers to a finding that is supported by substantial evidence "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley*, 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### 2. The ALJ's Analysis of Medical Opinion Evidence

For disability claims filed on or after March 27, 2017, SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources."[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* §§ 404.1520c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5). Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* §§ 404.1520c(a), 416.920c(a). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by

---

[3] This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to the medical opinion of a source who ha[d] examined [the claimant] than to the medical opinion of a medical source who ha[d] not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Those regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[4] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

In determining Showers's RFC, the ALJ considered the medical opinion evidence regarding Showers's physical limitations as follows:

> The undersigned considered the prior administrative medical findings of Disability Determination Services consultant Peter Arrowsmith, MD, who found that the claimant can lift, carry, push and pull 20 pounds occasionally and ten pounds frequently, can sit about six hours in an eight-hour workday, can stand and/or walk for six hours in an eight-hour workday; can never climb ladders, ropes or scaffolds; can occasionally perform all other postural maneuver; and must avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation and hazards, such as machinery and heights (Exhibit B3A, B4A). The undersigned also considered the prior administrative medical findings of Disability Determination Services consultant Sara Bomar, MD, who, in regard to the claimant's Title II claim, concurred with Dr. Arrowsmith's opinion, above, and in regard to the claimant's Title XVI claim, further opined the claimant can never crawl and must avoid concentrated exposure to extreme cold (Exhibits B7A, B8A). These opinions are

---

[4] This differs from the regulations governing claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2).

generally persuasive. These doctors are steeped in Social Security rules and regulations, had the opportunity to review the records at the time they rendered their opinions, and provided adequate analysis in support of their opinions. While the undersigned finds that the record indicates nuanced differences from these findings—such as, for example, further limitations in pushing and pulling in response to her neuropathy, while a limitation in regards to extreme cold is unsupported by the record - the above noted findings are nonetheless generally consistent with the longitudinal record, including that while the claimant was diagnosed with degenerative disc disease, underwent spinal surgery, exhibited lower extremity radiculopathy, underwent ankle plate surgery and ankle plate removal surgery, and at times walked with an antalgic gait, it was also noted - in contradiction to the intensity of her allegations—that her gait, station, and extremity motor and tone were normal, that straight leg testing was negative, that her ankle range of motion was excellent, that she was doing "reasonably well" one year after spinal surgery, that she appeared well-developed and well-nourished, and that her medication regimen was helpful (e.g. Exhibits B4F/15, B7F/3/4/13/37, B11F/12/36/37, B20F/4, 21F/7/10-12/24, B24F/4, B26F/19, B31F/24–26, B41F/1, B45F/3/4, B46F, B49F).

The undersigned considered the prior administrative medical findings of Disability Determination Services consultants George Livingston, PhD, and Jenaan Khaleeli, PsyD, who found that the claimant could do simple and detailed tasks with normal supervision and breaks, is limited to superficial contact with the general public, and can adequately adapt within the above-listed mental limitations (Exhibits B3A, B4A, B7 A, and B8A). These findings are persuasive. These doctors are steeped in Social Security rules and regulations, had the opportunity to review the records at the time they rendered their opinions, and provided adequate analysis in support of their opinions. While the undersigned finds that additional limitations—such as to low-stress work and regarding exposure to the general public—are more responsive in light of the claimant's posttraumatic stress disorder and testimony, the moderate limitations noted above are nonetheless broadly consistent with the longitudinal record, including that while the claimant was at times noted as exhibiting only fair recent and remote memory, judgment, insight, and insight control as well as poor attention and concentration, was diagnosed with posttraumatic stress disorder, and exhibited racing thoughts, it was also noted—in contradiction to the intensity of her allegations—that she on other occasions exhibited unimpaired recent and remote memory and intact judgement and insight, that her mentation was normal, that her thought content was logical, that she was rational, and that her demeanor was pleasant and cooperative (e.g. Exhibits B11E, B3F/5/7/12, B4F/4/15, B6F/6/7, B7F/13, B11F/36, B13F/6, B21F/7, B22F/26, B26F/19, B3SF/68, Hearing Testimony).

(AR 81–82.)

The Court finds that the ALJ applied the correct legal standard to analyze the medical opinion evidence and explained how she considered supportability and consistency factors as

required by 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). With respect to supportability—which focuses on the relevance of the objective medical evidence and supporting explanations the medical examiners presented to support their opinions, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)—the ALJ found that Dr. Arrowsmith and Dr. Bomar "provided adequate analysis in support of their opinions." (AR 82.) Addressing the consistency factor—which focuses on whether a medical opinion is consistent with other medical and nonmedical evidence in the record, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(1)—the ALJ found that, although the record supported some limitations that differed from Dr. Arrowsmith's and Dr. Bomar's recommendations, the administrative findings were "nonetheless generally consistent with the longitudinal record . . . ." (AR 82). Therefore, the ALJ properly analyzed the medical opinion evidence under the applicable SSA regulations.

### 3. Whether Showers Could Sustain Work on a Regular and Continuous Basis

Showers also argues that the ALJ erred by not evaluating whether Showers could sustain her RFC on a regular and continuous basis. She argues that her "memory deficits, insight control deficits, poor attention and concentration, and racing thoughts" show that she "would have bad days where she would be off task or wholly absent from work an impermissible amount of time" and that, "[g]iven the culmination of these mental impairments and the pain from her severe physical impairments, the ALJ should have provided analysis as to whether Ms. Showers could sustain work on a regular and continuous basis." (Doc. No. 25, PageID# 2883.)

The ALJ's decision states that "[a]n individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments." (AR 75.) In finding that Showers could perform light work on a sustained basis, the ALJ considered record evidence of Showers's mental and physical impairments and incorporated

that evidence into the RFC determination. (AR 80–81.) The ALJ also considered the opinions of Arrowsmith, Bomar, Livingston, and Khaleeli, who reviewed the record evidence and determined that Showers was capable of performing activities consistent with her RFC on a regular and continuous basis. (AR 81–82 (citing AR 172–221, 224–91).) Because the ALJ's RFC determination is supported by substantial evidence, applies the proper standards, and complies with the applicable SSA regulations, Showers is not entitled to remand on these grounds.

### B. The ALJ's Reliance on the Vocational Expert's Testimony

Showers also argues that the ALJ erred in relying on the testimony of vocational expert Sheri Pruitt because Pruitt's testimony conflicted with the Dictionary of Occupational Titles and Pruitt did not offer a basis justifying that departure. (Doc. No. 25.) Because the administrative record shows that Showers failed to cross-examine Pruitt at the administrative hearing, she has forfeited any argument that the ALJ's reliance on Pruitt's testimony was reversible error. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 636 (6th Cir. 2016) ("Because [claimant] failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument"); *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal."). Therefore, remand is not warranted on this ground.

## IV. Recommendation

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that Showers's motion for judgment on the administrative record (Doc. No. 24) be DENIED, and that the decision of the Commissioner be AFFIRMED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt

of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 22nd day of February, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge