UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| TINA M. SHOWERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00057 |
| | ) |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Magistrate Judge Newbern has issued a Report and Recommendation (Doc. No. 27) in which she recommends that Tina Shower's Motion for Judgment on the Administrative Record (Doc. No. 24) in this social security appeal be denied. Showers has filed two objections (Doc. No. 28), to which the Commissioner has replied.

First Showers argues that "the ALJ did not properly consider Ms. Showers' pain finding that medication reduced her pain" and this was compounded by Magistrate Newbern's "note[]that the record shows Ms. Showers pain level was reduced to a 3 on a 10-point scale." (Doc. No. 28 at 1). In fact, according to Showers, the record shows that she reported a reduction in her pain level to 3 on only one other occasion, once reported a pain level with medications to be a 5, and on four occasions stated her pain level was reduced to 7. (Id.).

It is true, as Showers argues, that the ALJ cannot "cherrypick[] evidence to support denial" of a claim. (Doc. No. 28 at 2) (citing Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 498 (6th Cir. 2014)). But neither Magistrate Judge Newbern nor the ALJ cherry-picked evidence, any more than Showers does. As Magistrate Judge Newbern stated, the ALJ's decision was based upon more than Showers' self-reporting of pain:

> The Court finds that the ALJ applied the correct legal standard to analyze Showers's statements about her physical symptoms and that the ALJ's RFC determination is supported by substantial evidence. Applying the two-step framework above, the ALJ found that step one was satisfied because Showers's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (AR 79.) At step two, however, the ALJ determined that Showers's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the objective medical evidence and other evidence in the record. (Id.) In reaching this conclusion, the ALJ cited and discussed record evidence including spinal imaging records from 2016, 2017, and 2019; a 2017 nerve conduction study, treatment records from Showers's 2017 ankle surgery and 2018 spinal surgery; and medical treatment notes from 2017 through 2019. (AR 80.) The ALJ also considered Showers's daily activities. (Id.)
>
> Showers argues that this analysis was flawed because the ALJ did not mention a 2017 EMG of Showers's lower extremities or her continued reports of pain, reduced sensation, and an antalgic gait after her 2018 spinal surgery. (Doc. No. 25 (citing AR 2126, 2216, 2253, 2629).) However, the ALJ explicitly discussed the results of the 2017 EMG, finding that it "w[as] abnormal and evidenced radiculopathy, and [Showers] was noted as exhibiting decreased lower extremity sensation." (AR 80 (citing AR 801).) The ALJ also explicitly discussed that Showers continued to exhibit an antalgic gait and reduced sensation after her spinal surgery. (AR 80.) While Showers reported continued pain after surgery, she told her providers that medication reduced her pain from a 10 to a 3 on a 10-point scale. (AR 2253.) This is consistent with the ALJ's finding that Showers's "medication regimen was helpful." (AR 80.)

(Doc. No. 27 at 10).

Contrary to Showers' suggestion, Magistrate Newbern did not inaccurately describe the record. When Showers reported that she had a pain level of 7 on August 29, 2018 and a pain level of 5 on September 26, 2018, she also indicated that her medication helped her to be more active and to sleep. (A.R. 2283, 2288). When Showers reported that her pain level was 7 on February 6, 2019, she conceded that the medication allowed her to do household chores, be more active, and sleep. (A.R. 2649). The same is true for May 9, 2019, when Showers reported a pain level 7, and on June 5, 2019, when she also reported a pain level 7. (A.R. 2649, 2627). Thus, Magistrate Judge Newbern

2

did not err in concluding that the ALJ was correct in finding that Showers' medication regimen was helpful.

Second, Showers argues that Magistrate Judge Newbern incorrectly "recommends that the ALJ properly relied on the reviewing source statements [that] they are all consistent with each other and consistent with the medical evidence of record" because this "recommendation fails to acknowledged that all reviewing physicians opinions were prior to October 23, 2018." (Doc. No. 28 at 1) This is in error, Showers insists, because "the reviewing physicians did not consider extensive records from Pain Management after that date," or "[p]hysical therapy records, and [an] MRI of the lumbar spine on August 14, 2019." (Id.). Counsel for Showers' then sets forth her opinion of what the supposedly overlooked MRI shows. (Doc. No. 28 at 2-3).

With the changes to the Federal Regulations effective March 27, 2017, the Social Security Administrations no longer defers or gives controlling weight to any medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, they are weighed based upon a number of factors, such as supportability and consistency. Id. Besides, even if the reviewing physicians' opinions were rendered before certain records were received, the fact of the matter is that the ALJ specifically considered at least some of the supposedly overlooked records, as evidenced by her citation to those records in her opinion denying benefits. (A.R. at 82). Regardless, Showers focuses on only one "cherry picked" MRI, and this is hardly enough to establish that substantial evidence did not support the ALJ's conclusion. See, Blakley v. Comm'r Of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted) (stating that "[t]he substantial-evidence standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion,'" and that this standard "presupposes that there is a zone of choice within which the decisionmakers can go either way,

without interference ").

Accordingly, the Court rules as follows:

(1) The Report and Recommendation (Doc. No. 27) is **ACCEPTED** and **APPROVED**;

(2) Shower's Objections (Doc. No. 28) are **OVERRULED**; and

(3) The decision of the Commissioner denying benefits is **AFFIRMED**.

The Clerk of the Court shall enter a final judgment and close this file.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

4

Case 2:20-cv-00057   Document 30   Filed 03/22/22   Page 4 of 4 PageID #: 2937